IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Thomas Richardson, | Civil Action No. 8:20-cv-03725-SAL-JDA |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Commissioner of Social Security Administration, | |
| Defendant. | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded.

**PROCEDURAL HISTORY**

In September 2017, Plaintiff filed an application for DIB, alleging a disability onset date of August 5, 2016. [R. 193–94.] The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 126–29, 131–36.] Plaintiff requested a hearing before an administrative law judge ("ALJ") and on July 24, 2019, ALJ Alice Jordan conducted a de novo hearing on Plaintiff's claim. [R. 34–85.]

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

The ALJ issued a decision on October 11, 2019, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 13–33.] At Step 1, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2021, and had not engaged in substantial gainful activity since August 5, 2016, the alleged onset date. [R. 18, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: postconcussional syndrome, cervicocranial syndrome, and mild degenerative disc disease of the cervical spine. [R. 18, Finding 3.] At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 18, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform medium work as defined in 20 CFR 404.1567(c). I specifically find that the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently. The claimant can sit and stand and/or walk, with normal breaks, for 6 hours each in an 8-hour workday. The claimant can occasionally climb. The claimant must avoid concentrated exposure to hazards. Despite his memory problems, the claimant would be able to understand and carry out simple instructions and maintain concentration for at least two-hour periods to perform unskilled or semiskilled work. The claimant would be limited to occasional interaction with the general public.

[R. 20, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work as a hydraulic repairer, metal fabricator, brake repairer, diesel mechanic, garage supervisor, automobile mechanic, general manager of automobile services, service manager, and transmission mechanic. [R. 26, Finding 6.] However, considering his age, education, work experience, RFC, and the testimony of the

vocational expert ("VE"), the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 26, Finding 10.] Thus, the ALJ determined that Plaintiff has not been under a disability, as defined in the Act, from August 5, 2016, through the date of the decision. [R. 27, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision and the Council declined review. [R. 1–7.] Plaintiff filed this action for judicial review on October 22, 2020. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues that the case should be reversed and remanded. [Doc. 12.] Specifically, Plaintiff contends that the ALJ improperly evaluated the opinion evidence and that the Appeals Council erred by failing to weigh new evidence submitted for consideration. [*Id.* at 26–32; Doc. 14.] The Commissioner, on the other hand, argues that substantial evidence supports the ALJ's evaluation of the medical source opinions and that the Appeals Council properly evaluated the evidence submitted after the ALJ's decision and found it did not provide a basis for remand. [Doc. 13 at 6–17.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular

3

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C.

§ 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brenem v. Harris*, 621 F.2d 688, 690–91 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the

claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207.

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[2] With remand under sentence

---

[2] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the

6

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

### I.     The Five-Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings

---

more stringent *Borders* inquiry.

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[3] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

**E.    *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir.

---

[3]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

[4]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe

into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Medical Opinions

For claims filed on or after March 27, 2017, as Plaintiff's is, the applicable regulations require ALJs to consider the persuasiveness of each medical opinion of record in accordance with the following factors:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion.[5]  20 C.F.R. § 404.1520c(b), (c).  Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion . . . the more persuasive the medical opinion will be." 20 C.F.R. §§ 404.1520c(c)(1).  As for the relationship with the claimant, ALJs consider the "length of the treatment relationship," the "[f]requency of examinations," the "[p]urpose of the treatment relationship," the "[e]xtent of the treatment relationship," and whether the source has examined the claimant.   20 C.F.R. § 404.1520c(c)(3).

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v.*

---

[5]The new regulations define the term "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."  20 C.F.R. § 404.1513(a)(2).

12

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

**V.     Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  Social Security Ruling ("SSR") 16-3p provides, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  Social Security Ruling 16-3p Titles II and XVI:  Evaluation of Symptoms In Disability Claims, 82 Fed. Reg. 49,462, 49,464 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion); *see also* SSR 16-3p, 82 Fed. Reg. at 49,463.  First, "the ALJ must determine whether the claimant

has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce'" the alleged symptoms. *Id.* (quoting *Craig*, 76 F.3d at 594); *see* SSR 16-3p, 82 Fed. Reg. at 49,463.  Second, the ALJ must evaluate "the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . or to function independently."  SSR 16-3p, 82 Fed. Reg. at 49,464; *see* 20 C.F.R. § 404.1528 (noting that the ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence).

## **APPLICATION AND ANALYSIS**

### **Dr. Dukes' Medical Opinion**

On June 10, 2019, William E. Dukes, M.D., completed a questionnaire concerning Plaintiff's ability to perform work on an 8-hour day, 5-day-per-week basis and opined as follows:

- Plaintiff is not able to perform sedentary work on a sustained basis;

- Plaintiff is not able to perform any work that involves more than one- or two-step processes because he has memory loss that impairs his ability to follow instructions;

- Plaintiff lacks the ability to respond appropriately to work instructions, commands, or directions;

- Plaintiff would probably have to rest away from his work station for significantly more than one hour during the working portion of the day;

- Plaintiff would be absent frequently with severe headaches; and

- Plaintiff would have problems with attention and concentration that would disrupt and interrupt work tasks, likely multiple times each day.

[R. 432.] Dr. Dukes based his opinion on multiple office visits, including one where he observed an episode of severe headache. [R. 433.] Dr. Dukes noted that Plaintiff's diagnoses underlying his impairments included severe migraine headaches secondary to previous trauma (blow to head); short term memory loss; and unprovoked anger secondary to previous trauma and that Plaintiff had had a severe work-related injury to his head in 2016 when he was hit with a heavy piece of metal. [*Id.*]

### *The ALJ's Evaluation*

The ALJ, in evaluating the opinion evidence, found Dr. Dukes' opinion to be less persuasive than the opinions of the state agency psychologist and medical consultants. [R. 25.] The ALJ explained as follows:

> In a medical source statement dated June 10, 2019, Dr. Dukes opined that the claimant is not able to perform sedentary work. He is not able to perform any work that involves more than one or two-step processes. He has memory loss which impair[]s following instructions. He has a lack of ability to respond appropriately to work instructions, commands or direct[ion]s. He would have to rest away from the workstation for significantly more than an hour during the workday. He would be absent from work frequently (more than 3 days a month) due to severe, frequent headaches. He has problems with attention and concentration that would interrupt work tasks on a daily basis. Although Dr. Dukes has a longitudinal treatment history with the claimant and is familiar with the claimant's symptoms and limitations, his opinion is not supported by his examination findings or consistent with the weight of the objective medical evidence. Sedentary restrictions entail limitations of standing or walking no more than two hours in an eight-hour workday and lifting no more than 10 pounds. However, longitudinal physical examinations, as documented above, are unremarkable. This includes regular findings of

15

> normal motor strength, sensation, gait and ranges of motion. Therefore, it is unclear as to the basis of why the claimant is unable to perform even these sedentary exertional limitations. Dr. Dukes['] examinations are usually limited in scope, often indicating benign findings, such as the claimant is alert, pleasant and in no acute distress. Moreover, MRI and CT scans were normal and the consultative examiners' findings indicate less remarkable findings. For instance, Dr. Holt noted that he did not have any difficulty following directions. Consultative examiner Dr. Hammond noted that the claimant repeated a four-item word list and after brief delay recalled three or four words without assistance and the other from multiple choices, which is normal. He could mentally multiply 2 x 12 and 2 x 24. He counted from 1 to 25 without error in six seconds, which is normal. He alternated between the numbers 1 through 13 and the letters "A" through "M" in 32 seconds without error, which is normal. He was able to write a legible sentence to dictation with adequate spelling, capitalization, and punctuation. Dr. Hammond opined that the claimant is able to understand, remember and execute simple instructions in a timely manner. Moreover, the claimant stated in his Function Report that he can follow written and spoken instructions "OK."

[R. 25 (citations omitted).]

### *Discussion*

Plaintiff argues that the medical evidence the ALJ cited to contradict Dr. Dukes' opinions—"normal motor strength, sensation, gait and ranges of motion"; "often benign findings, such as the claimant is alert, pleasant and in no acute distress"; and normal MRI and CT scans—do not actually contradict Dr. Dukes' opinion that Plaintiff's migraines impact his ability to maintain focus and concentration or that his memory loss limits him to one- to two-step processes. [Doc. 12 at 28.] Plaintiff further argues that none of the state or consultative examiners refuted Dr. Dukes' opinion that Plaintiff's headaches would cause him to rest away from the work station for significantly more than an hour during the

16

working portion of the work day, would cause him to miss more than 3 days of work per a month, or would cause problems with attention and concentration that would disrupt and interrupt work tasks and would likely happen multiple times each day due to his frequent migraine headaches.  [*Id.* at 29.]  Plaintiff contends the ALJ failed to build a logical bridge between the evidence and her conclusion.  [*Id*.]  The Court agrees.

Upon review, the Court notes that the longitudinal medical record is replete with documentation of Plaintiff's debilitating headaches and memory deficits after being struck in the head at work by a piece of steel.  Plaintiff testified that he is unable to work because of headaches, dizziness, being unable to remember stuff, and being unable to mentally do tasks.  [R. 53.]  Plaintiff testified that his headaches come out of nowhere, take him to his knees, and have been so bad his wife has had to take him to the hospital.  [*Id*.]  He indicated the headaches sometimes last 15 minutes and they sometimes last three to four days.  [R. 56.]  Plaintiff experienced a headache he described as feeling like a lightning bolt during the hearing but was able to continue testifying after taking a moment to let the pain subside.  [R. 49, 56, 59.]  Plaintiff testified that these "lightning bolt headaches" are the most severe physical problem he has that keeps him from working.  [R. 60.]  Dr. Dukes' office visit notes support Plaintiff's testimony regarding his headaches, including a visit to the emergency room because of a severe headache.  [R. 391–93, 396–98, 401, 420–24.]

In an effort to accommodate Plaintiff's "alleged frequent migraines and memory deficits," the ALJ found that Plaintiff "must avoid concentrated exposure to hazards" and "can understand and carry out simple instructions and maintain concentration for at least

two-hour periods to perform unskilled or semiskilled work." [R. 21.] The ALJ, however, did not address how long Plaintiff might be off task or away from work in the event he experiences a severe headache while working. Moreover, it appears that the only opinion evidence in the record directed to Plaintiff's ability to maintain the pace of a regular workday is the opinion provided by Dr. Dukes that Plaintiff would have to rest away from the workstation for significantly more than one hour and would be absent from work frequently—probably more than 3 days per month—due to severe headaches.

In finding Dr. Dukes' opinion to be less persuasive, the ALJ relied on unremarkable physical examinations, including "regular findings of normal motor strength, sensation, gait and ranges of motion" and normal MRI and CT scans, and Plaintiff's ability to remember simple directions during the consultative examinations. [R. 25.] However, it is unclear to the Court how these normal examinations while Plaintiff was not experiencing a severe headache contradict Dr. Dukes' opinions regarding how Plaintiff's headaches would impact his ability to work when he has them frequently. Indeed, the ALJ never addressed Dr. Dukes' opinion that Plaintiff would have difficulty staying on task, and none of the other state or consultative examiners provided an opinion regarding Plaintiff's ability to stay on task in the event he experiences severe headaches while at work.[6] The ALJ never explained why Dr. Dukes' opinion regarding Plaintiff's inability to stay on task throughout

---

[6]Discussion of Plaintiff's ability to stay on task and attend work regularly is particularly important in this case given the vocational expert's testimony that there would be no work for a hypothetical individual with Plaintiff's RFC but who would miss more than three days of work per month because of headaches. [R. 84.]

a workday was inconsistent or not supported by the record evidence.[7]  Nor did the ALJ adequately address the factors outlined in the applicable regulations.  For the Court to be able to conduct meaningful judicial review of the ALJ's decision, including the ALJ's evaluation of Dr. Dukes' opinion, the ALJ must construct a "logical bridge" explaining her analysis.  *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016 (internal quotation marks omitted).

Because the ALJ here not has not satisfactorily explained how the applicable rules support her findings, the undersigned recommends reversing the ALJ's decision and remanding for further proceedings.[8]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

---

[7]The Court notes that the ALJ did find that Plaintiff's postconcussional syndrome is a severe impairment [R. 18, Finding 3], meaning that it significantly limits his ability to perform basic work activities, *see* 20 C.F.R. § 404.1521.  Symptoms of post-concussion syndrome are often vague and non-specific, and commonly reported symptoms include: headache; dizziness; sleep problems; psychological symptoms such as depressed mood, irritability, and anxiety; and cognitive problems involving memory, concentration, and thinking. https://www.webmd.com/brain/post-concussion-syndrome (last visited October 26, 2021).

[8]Because the undersigned finds that the ALJ's decision contains error and the case should be remanded on that basis, the Court need not address Plaintiff's argument that the Appeals Council erred by failing to weigh new evidence submitted for consideration.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

October 27, 2021
Greenville, South Carolina